**William R. SCOTT and Bessie E. Scott, Appellants,**

v.

**Dennis P. CANNON and Katherine Berkley Cannon, Appellees.**

No. 03–97–00390–CV.

Court of Appeals of Texas, Austin.

Jan. 15, 1998.

Rehearing Overruled Feb. 12, 1998.

---

J. Bruce Bennett, Baskin, Bennett & Komkov, L.L.P., Austin, for Appellants.

Christopher L. Boldt, Baker, Boldt & Gallerano, Dripping Springs, for Appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

KIDD, Justice.

This is an appeal of a declaratory judgment and a permanent injunction prohibiting the appellants William R. Scott and Bessie E. Scott (the "Scotts") from using a roadway located on property owned by appellees Dennis P. Cannon and Katherine Berkley Cannon (the "Cannons"). In nineteen points of error, the Scotts challenge the sufficiency of the evidence supporting the trial court's conclusions that the road on the Cannons' property is private and the Scotts have no easement to use it.

## BACKGROUND

The Scotts and Cannons have been neighbors for over thirty years. As seen on the map below, the only access from Highway 290 to the Scotts' property (denoted on the map as "RANDERSON–IRELAND–SCOTT" hereinafter the "Scott Tract") is a roadway (hereinafter the "Road") that crosses two pieces of property owned by the Cannons (denoted on the map as "CH BERKLEY" and "TINNEY–GARCIA–CANNON," hereinafter the "Berkley Tract" and the "Tinney Tract" respectively). Although there is an existing unpaved access to the Scotts' property from a public road (denoted on the map as the "Old Road to Pound Property," hereinafter the "Pound Road"), the Road from Highway 290 has been the *main* access to the Scott Tract for as long as anyone can remember.[1] It is undisputed, however, that neither the Cannons nor their predecessors in title ever dedicated or granted an express easement to use the Road to the Scotts, the Scotts' predecessors in title, or the public. Whether the Cannons or the Cannons' predecessors in title gave the Scotts or the Scotts' predecessors in title permission to use the roadway remains disputed.

---

1. A witness testified that he used the Road in the 1920's. Moreover, an aerial photo shows the existence of the Road in 1937.

### History of Title

It is undisputed that the Scotts' property was never purchased from the Cannons or any of the Cannons' predecessors in title. Rather, the Scott Tract was originally created in 1884 by Dr. Joseph Pound when he sold 200 acres of his 700 acre tract to N.J. Jones. This 200–acre tract, referred to herein as the Scott Tract, was later sold to Hattie Randerson. In 1942, Randerson conveyed the tract to Bessie Scott's father, John Ireland. Fi-

nally, in 1957 the Scotts purchased the tract from Ireland and have lived there since that purchase. As for the remaining Pound property, most of it was dedicated to the City of Dripping Springs in 1983 and is denoted on the map as the "City Park."

Immediately south of the Scott Tract are two tracts of land owned by the Cannons. The Berkley Tract, which immediately adjoins the Scott Tract, has been in Katherine Cannon's family since 1909 when her grand-

father, C.H. Berkley, purchased it from P. Leinneweber. Katherine Cannon's father, Lee Berkley, used the property to run cattle but the record is unclear as to when and how long he actually lived on the property.[2] Katherine Cannon moved onto the property in 1967 and has lived there ever since.[3]

Adjoining the Berkley Tract is the second piece of property owned by the Cannons, the Tinney Tract. The Tinney Tract was first owned by John Tinney. Tinney conveyed his land to a person known in the record as Dr. Garcia. Garcia and the Berkleys remained neighbors until the Cannons purchased Dr. Garcia's land in 1966.

## THE DISPUTE

In early 1996, an agent for Sprint Telecommunications approached the Cannons about permitting Sprint to place a communication tower on their land. The Cannons refused. The Sprint agent then approached the Scotts. The Scotts granted Sprint permission to place the tower on their land and told the Sprint agent that Sprint could use the Road to get to its tower.[4] The Cannons, however, told the agent that the Road was private and that the Scotts did not have the authority to grant permission for its use. The Cannons informed the agent that they owned the Road and that the Scotts had no easement over their land.

Shortly thereafter, the Cannons instructed their lawyer to send a letter to the Scotts terminating permission to use the Road and threatening them with trespass charges if they continued to do so. The Scotts responded by suing for an injunction and a declaratory judgment to secure and confirm their right to use the Road. The Scotts alleged that they had a permanent right to use the Road because they had acquired an easement over the Cannons' property by estoppel, necessity, and/or prescription. The Cannons counterclaimed seeking a declaratory judgment that the Road was private and

requesting a permanent injunction prohibiting the Scotts from further use of the Road.

Following a bench trial, the trial court rendered judgment for the Cannons. The trial court declared that the Road was private and that the Scotts had no rights of any kind to use the Road. Moreover, the trial court permanently enjoined the Scotts from using the Road and held them liable for $13,000 in attorneys' fees. The Scotts appeal alleging nineteen points of error. These points are grouped to establish the following contentions: (1) the trial court erred in concluding that the Road was private and that the Cannons made no implied dedication of a public easement; (2) the trial court erred in concluding that the Scotts have not acquired an easement by estoppel; (3) the trial court erred in concluding that the Scotts have not acquired an easement by necessity; (4) the trial court erred in concluding that the Scotts have not acquired an easement by prescription; and (5) the trial court erred in awarding the Cannons attorneys' fees.

## DISCUSSION

### Public Road vs. Private Road

As a threshold issue, we must first consider whether the trial court erred in concluding that the Road is private. The Scotts contend that the evidence presented at trial conclusively proved that the Road had been dedicated by the Cannons for public use. In support of their contention, they introduced an affidavit filed and recorded in 1964 ("1964 Affidavit"). Because this affidavit is crucial to the Scotts' entire appeal, we will address the facts surrounding it in some detail.

#### 1964 Affidavit

In 1963, the Scotts applied for a home improvement loan with the Federal Land Bank (the "Bank") for the purpose of remod-

---

2. There is evidence in the record that Lee Berkley did not live on the Berkley Tract when the Scotts bought their property in 1957. However, there is also evidence in the record that Lee Berkley was living on the Berkley Tract at least by 1964.

3. The record is unclear as to when Katherine Cannon and her sister inherited the Berkley Tract. However, it is clear that Katherine has been the sole owner of the house on the Berkley

Tract since she and her sister made a division of the Berkley Tract in 1988.

4. The Scotts used the Road primarily for purposes of ingress and egress to their tract. However, as discussed at the end of this opinion, there is some evidence in the record that others used the Road to get to the Scotts' house for a "child care" arrangement. However, we cannot determine from this record the nature and scope of this "child care" operation.

eling their home. Before the Bank would grant the loan, the Bank required the Scotts to secure an affidavit stating that the Road to their home was a public road. The Scotts' attorney contacted two longtime area residents, W.E. McNair and W.P. Crow, and prepared an affidavit for their signature. McNair and Crow swore that they were familiar with the Road and they stated in relevant part:

> I feel the public considers this road used as ingress and egress to Mr. Scott's place as a public thoroughfare, not prohibited for use of the public so desiring to use the road. I know the public has for over twenty years used the road as a public road and look upon the same as no part of the adjoining landowner's property but as being open to them to come to Mr. William R. Scott's property.

McNair and Crow signed the affidavit on May 18, 1964. In June 1964, *without notice* to the Cannons or their predecessors in title, the 1964 Affidavit was filed and recorded with the Hays County Clerk's Office.

In October 1972, an attorney for the Cannons discovered the 1964 Affidavit by accident. It is *undisputed* that upon discovery of the affidavit, the Cannons through their attorney informed the Scotts that the Road was *not a "public road."* The events taking place after that conversation, however, remain disputed. The Scotts contend that they refused the Cannons' request to remove the 1964 Affidavit from the public record. The Scotts further contend that they told the Cannons that unless the Cannons would grant them an express easement, they would take no action to remove the 1964 Affidavit. Because no express easement was ever presented to them, the Scotts contend that the

Road remained open for use by anyone desiring to visit their property.

The Cannons, on the other hand, contend that after they informed the Scotts that the Road was "not public," their attorney told the Scotts to draft an express easement for consideration by the Cannons. Because no such document was ever presented, the testimony indicates that at that point Mrs. Cannon believed that it was "a good time to just keep quiet" because use of the Road from thereon would be construed as permissive.

**Easement by Implied Dedication⁵**

 "Dedication" is the act of appropriating private land to the public for any general or public use. Once dedicated, the owner of the land reserves no rights that are incompatible with the full enjoyment of the public. *See* 2 George W. Thompson, *Commentaries on the Modern Law of Real Property* § 369 (1980).⁶ In Texas, the doctrine of implied dedication is well established.⁷ As stated by the Texas Supreme Court, a claimant can prove an implied dedication of an easement if it is shown that: (1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) the landowner owned the land in fee simple and therefore was competent to dedicate the land; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication. *See Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984); *Lindner v. Hill,* 691 S.W.2d 590, 592 (Tex.1985); *see also* Robert Brousseau, *Real Property: Purchase, Sale, Title, and Ownership,* 40 Sw. L.J. 301, 318–19 (1986). Whether the claimant has proved these elements is a question of fact.

---

**5.** The Cannons assert that because easement by implied dedication was not specifically pleaded at the trial court it is not properly preserved for review. While this appears to be a strong argument, we will nonetheless address the Scotts' arguments as to this issue on its merits.

**6.** We note from the beginning that the Scotts assume a heavy burden in alleging and proving an implied dedication. Such a finding would result in the appropriation of private property for a public use without any compensation to the landowner and is thus disfavored in law as contrary to article I, section 17 of the Texas Consti-

tution. *See County of Real v. Hafley,* 873 S.W.2d 725, 728 (Tex.App.—San Antonio 1994, writ denied); *see also* Tex. Const. art. I, § 17.

**7.** Implied dedication is sometimes referred to in Texas as "common law dedication" or "dedication by estoppel." *See, e.g., Greenway Parks Home Owners Ass'n v. City of Dallas,* 159 Tex. 46, 312 S.W.2d 235, 241 (1958); *Roberts v. Allison,* 836 S.W.2d 185, 189 (Tex.App.—Tyler 1992, writ denied); *Barstow v. State,* 742 S.W.2d 495, 504 (Tex.App.—Austin 1987, writ denied); *Poindexter v. Schaffner,* 162 S.W. 22, 23 (Tex.Civ.App.—Dallas 1913, no writ).

See *Lindner*, 691 S.W.2d at 591; *Malone v. Whitfield*, 621 S.W.2d 192, 195 (Tex.Civ. App.—Waco 1981, writ ref'd n.r.e.); *Lee v. Uvalde County*, 616 S.W.2d 367, 373 (Tex. Civ.App.—Tyler 1981, no writ); *Garza v. Garza*, 552 S.W.2d 947, 952 (Tex.Civ.App.— Tyler 1977, no writ).

Recently, the San Antonio Court of Appeals articulated an exhaustive analysis of each of the elements of an easement by implied dedication in *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 837 (Tex.App.—San Antonio 1997, no writ). In *Gutierrez*, the County of Zapata sought to enjoin Gutierrez from interfering with the public's right of ingress and egress over a portion of a road located on Gutierrez's property. On appeal, the court of appeals upheld the injunction granted by the trial court finding some evidence to support each element of an implied dedication. Regarding the first element, *donative intent*,[8] the court stated that there was a *clear and unequivocal intention* to dedicate as evidenced by the following: (1) an agreement entered into between Gutierrez's predecessor in title and the County for a deviation in the road paid for by the County and conditioned upon that road being public; (2) the fact that the County improved and maintained the road at the public's expense; (3) the fact that the County erected bridges, cattle guards, speed bumps and traffic signs on the road; and finally (4) a survey that identified the road in question as a "County Road." As to the second element, *legal capacity*, the court stated that Gutierrez admitted that she and her predecessors in title had always been the fee owners of the portion of the road in dispute. Therefore, they had the capacity as required by law to dedicate the land. As to the third element, *public need or public use*, the court found that the road in question was essential for school buses to service their routes and for fire, police, and other emergency services to serve the surrounding area. Finally, with regard to the fourth element, *public acceptance of the dedicated road*, the court stated that the circumstantial use by the public as noted in the preceding element constituted

evidence of acceptance of the implied dedication. Acceptance, the court noted, did not require a formal or express act. *See id.* at 840–42.

We find *Gutierrez* to be instructive in the present case. However, unlike *Gutierrez*, the trial court in the present case found from the disputed evidence that the road was private. Therefore, in order for us to reverse the trial court's finding, the Scotts must demonstrate that the evidence establishes that the Road was impliedly dedicated as a matter of law. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). The Scotts cannot meet such a burden given the facts present in the record.

First, unlike *Gutierrez*, neither the Cannons nor any of their predecessors in title asked for or received any support from public funds to help maintain and repair the Road. In fact, the record is replete with evidence that the Cannons and Scotts paid for all maintenance and repairs to the Road themselves. Second, the Scotts' evidence of donative intent was the fact that the public used the road for a long period of time without protest from the Cannons or the Cannons' predecessors. Such evidence, however, is insufficient as a matter of law. *See Gutierrez*, 951 S.W.2d at 839. Third, it is undisputed that in 1972 the Cannons made it clear to the Scotts that the Road was not a "public road." Finally, unlike *Gutierrez*, the Road in the present case was used strictly for ingress and egress to the Cannons' and Scotts' properties. There was no other public need for use of the Road. Therefore, because neither donative intent nor public need can be established conclusively, we overrule all points of error regarding an easement by implied dedication and affirm the trial court's conclusion that the Road is private.

Having determined that the trial court did not err in finding that the Road is private, we now must consider whether the Scotts established an easement over the Cannons' property to use the Road. The Scotts assert three

---

8. There will be no presumption of an intent to dedicate unless it is clearly shown by the landowner's acts, declarations, or by a line of conduct, the only reasonable explanation for which is that a dedication was intended. *Id.* at 838.

legal theories to support their claim: easement by estoppel, easement by necessity, and easement by prescription. We will examine each one in turn.

**Easement by Estoppel**

■ As it relates to easements, the doctrine of equitable estoppel, or estoppel *in pais* as it is sometimes called, is a legal theory the exact nature and extent of which has not been clearly defined. *See Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex.1979); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex.1962); *see also* 31A Tex. Jur.3d *Easements & Licenses in Real Property* § 40 (1994). Generally, the doctrine operates as an exception to the statute of frauds which requires a writing for all transactions involving land to prevent injustice and protect innocent parties from *fraud. Storms*, 579 S.W.2d at 451.

The rule concerning easements by estoppel was first pronounced by the Texas Supreme Court in *Harrison & Co. v. Boring*, 44 Tex. 255 (1875), wherein the Court stated that:

The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel *in pais*. As where he has by parol agreement granted a right of such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.

*Harrison*, 44 Tex. at 267. The doctrine has since been applied in cases arising out of and involving: (1) a dedication of a street, alley, or square; (2) an owner selling land with reference to a map or plat; and (3) a seller of land who allows its purchaser to expend money on an alleged "servient" estate. *See Drye*, 364 S.W.2d at 209–10. Outside these categories, application of the doctrine is "rare and nebulous." *Id.* at 209; *see also* 3 Herbert Thorndike Tiffany, *The Law of Real Property* §§ 799–801 (1939 & Supp.1972).

■ As more recently stated by the Texas Supreme Court, the doctrine holds that the owner of land is estopped to deny the existence of an easement by making representations that are acted upon by a *purchaser* to his detriment. *Storms*, 579 S.W.2d at 451; *see also Wilson v. McGuffin*, 749 S.W.2d 606, 610 (Tex.App.—Corpus Christi 1988, writ denied). Therefore, the basic elements needed to establish an easement by estoppel are: (1) a representation communicated to a promisee; (2) the communication is believed; and (3) reliance on the communication. *See Lakeside Launches v. Austin Yacht Club*, 750 S.W.2d 868, 872 (Tex.App.—Austin 1988, writ denied) (something must be said or done by owner of servient estate *at time owner grants* dominant estate which induced *acceptance* of grant to create easement by estoppel).

■ None of these elements exists in the present case. First, we believe after reviewing the cases, that the law requires a vendor/vendee relationship to establish an easement by estoppel. *See Drye*, 364 S.W.2d 196, 209–10; *Wilson*, 749 S.W.2d at 610. It is undisputed that no such relationship exists in the present case. Moreover, any representations made by anyone other than the Cannons or the Cannons' predecessors in title that caused the Scotts to believe that an easement existed to use the Cannons' Road are not binding on the Cannons. Tiffany at § 799 (doctrine of estoppel cannot be used to create right of way over another's land). Therefore, the Scotts' argument that the Cannons' failure to remove the 1964 Affidavit in which two members of the public proclaimed an easement to use the Road is insufficient as a matter of law to create an easement by estoppel.

■ Second, assuming without deciding that a vendor/vendee relationship is not required to establish an easement by estoppel, the record does not show *conclusively* that the Cannons or the Cannons' predecessors in title made any fraudulent misrepresentations to the Scotts or the Scotts' predecessors in title. Because equitable estoppel is a fact-oriented doctrine, the trial court as finder of fact in this case was charged with the responsibility to weigh the evidence. We cannot, on this record, say as a matter of law that the Cannons affirmatively represented to the Scotts that an easement existed to use

the Road. *See Holley,* 629 S.W.2d at 696 (Tex.1982). There was, at most, a passive acquiescence on the part of the Cannons that was relied upon by the Scotts. Such an acquiescence for no matter how long a period does not estop the Cannons from denying the Scotts' claim of an easement by estoppel. *See Roberts v. Allison,* 836 S.W.2d 185, 187 (Tex.App.—Tyler 1992, writ denied) (use of road does not estop landowner from denying one's claim of easement).

We therefore overrule all points of error on the issue of an easement by estoppel and affirm the trial court's decision declining to find such an easement.

**Easement by Necessity**

■ Texas case law establishes that when a grantor conveys part of a tract of land while retaining the remaining acreage for itself there is an implied easement by necessity when no other access exists. The three elements needed to establish an implied easement by necessity are: (1) unity of ownership prior to separation; (2) access must be a necessity and not merely a convenience; and (3) the necessity must exist at the time of severance of the two estates. *See Koonce v. J.E. Brite Estate,* 663 S.W.2d 451, 452 (Tex. 1984).

■ The Scotts' argument that an easement by necessity has been established fails for two reasons. First, there is no evidence in this record to support the element of unity of ownership. To establish unity of ownership the Scotts had to prove that prior to severance their grantor, John Ireland, owned both the alleged dominant and servient estates as a unit or single tract. *See id.* It is undisputed, as shown above in the history of each tract's title, that this is not the case. The Scotts derived their title to the Scott Tract from Ireland while the Cannons derived their titles to the Berkley and Tinney Tracts from Linneweber and Dr. Garcia respectively.

■ Second, the Scotts cannot conclusively show that the use of the Road was an absolute necessity. It is well established that if a landowner has another way to its property, the landowner cannot claim by implication the right to pass over another's property. *See Daniel v. Fox,* 917 S.W.2d 106, 111 (Tex.App.—San Antonio 1996, writ denied). As shown on the map, there is an access, referred to as the Pound Road, that leads to another public road (denoted on the map as "RR 12"). While the record shows that the Pound Road is difficult to traverse by vehicle, it is not impossible. The fact that the alternate route would be inconvenient and expensive does not justify imposing an easement by necessity. *See id; Duff v. Matthews,* 158 Tex. 333, 311 S.W.2d 637, 640 (1958).

Having concluded that there is no unity of title nor a strict necessity to use the Road, we overrule all points of error regarding the Scotts' claim of an easement by necessity.

**Easement by Prescription**

■ As distinguished from easements by implied dedication and by estoppel in which one looks to the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under a color of right. *See* Thompson at § 369. To obtain a prescriptive easement, one must use someone else's land in a manner that is open, notorious, continuous, exclusive, and adverse for a period of ten years or more. *Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979); *Wiegand v. Riojas,* 547 S.W.2d 287, 289 (Tex.Civ.App.—Austin 1977, no writ). Here, the only issues that are disputed concerning the acquisition of a prescriptive easement are exclusivity and adversity.

*Exclusivity*

The Cannons argue that because they have *jointly* used the roadway with the Scotts, the Scotts cannot prove the element of exclusivity as a matter of law. As authority for their position, the Cannons cite the following cases: *Vrazel v. Skrabanek,* 725 S.W.2d 709, 711 (Tex.1987) (exclusivity not met when landowner and claimant both used the road); *Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex. 1979) (when landowner and claimant of easement both use same way, use by claimant is not exclusive of owner's use and therefore is not adverse); *Wilson v. McGuffin,* 749 S.W.2d 606, 610 (Tex.App.—Corpus Christi 1988, writ denied) (when landowner and

claimant of prescriptive easement freely use the road, there is no evidence of exclusive use); *Stark v. Morgan,* 602 S.W.2d 298, 306 (Tex.App.—Dallas 1980, writ ref'd n.r.e.) (periodic use by landowner with claimant is enough to show that the required element of exclusivity was lacking); and *International Paper Co. v. Aydelott,* 584 S.W.2d 880, 881 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (use of road was not exclusive as required for prescriptive easement).

▪ The Scotts argue, however, that the authorities for the Cannons' position are distinguishable from the unique facts of the present case. We agree. In the cases cited by the Cannons and in the cases we have reviewed dealing with the requirement of exclusivity, the claimants were trying to establish an easement by prescription based on *continuous use alone.* There was no evidence in any of those cases *other than use* of the road to establish an adverse claim of right. Therefore, it was logical for the courts in those cases to hold that joint use prevented a prescriptive easement because joint use showed that the claimant's use was not adverse to the landowner. *See Brooks,* 578 S.W.2d at 673. We believe that the facts of the instant case present a case of first impression involving *both* joint use *and* independent acts to show adversity. As such, we hold that the authorities cited by the Cannons are not controlling. *See* Thompson at § 343 (*absent* some decisive act by the user indicating a separate and exclusive use on its part, a joint use negates adverse intent). Having said this, we will address the Scotts' argument concerning adversity.

### Adversity

▪ The hostile and adverse character of the use necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. *See Othen v. Rosier,* 148

Tex. 485, 226 S.W.2d 622, 626 (1950); *Elliott v. Elliott,* 597 S.W.2d 795, 801 (Tex.Civ. App.—Corpus Christi 1980, no writ); *City of Houston v. Church,* 554 S.W.2d 242, 245 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). One general test to determine whether a claim is hostile is whether the adverse possessor's use, occupancy, and possession of the land is of such nature and character as to notify the true owner that the claimant is asserting a hostile claim to the land. *See Elliott,* 597 S.W.2d at 801. As this Court has stated, there must be a *distinct* and *positive assertion* of a right which is brought to the servient owner's attention and which is hostile to the owner's rights. *Wiegand,* 547 S.W.2d at 290.

▪ The Cannons argue that Mrs. Cannon's testimony that Lee Berkley gave John Ireland permission to use the Road constitutes some evidence to support the trial court's finding that use of the Road has always been permissive and therefore no claim for prescription is available.[9] While we agree with the Cannons that this evidence is sufficient to establish that no easement by prescription existed prior to 1972, the events taking place after that time must be more closely examined.

▪ It is *undisputed* that in 1972 the Cannons were made aware of the Scott's claim of right to use the Road.[10] We believe that this is the type of *distinct and positive assertion* which we required in *Wiegand* to "transform permissive use of an easement into an adverse use." *Id.* at 290. Moreover, the Scotts continued to use the Road thereafter even though there is no evidence in the record to show that after 1972 the Cannons gave the Scotts permission to use the Road or that the Scotts looked to the Cannons for permission. Finally, the fact that the Scotts helped pay for repairing and maintaining the Road is inconsistent with the Cannons' claim

---

9. The Scotts objected to this testimony as inadmissible hearsay and have challenged its admissibility on appeal. We hold that this testimony is not hearsay under Texas Rules of Civil Evidence 802. Rather, this testimony is necessary where the utterance or writing is an *operative fact. See Meredith v. Eddy,* 616 S.W.2d 235, 238 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ).

10. We agree with the Cannons that the affidavit itself was not sufficient to begin the prescriptive period. However, upon discovery of the affidavit by their attorney, the Cannons were given actual notice of the Scotts' claim that they had a right to use the alleged easement.

that it was "their road." Therefore, it was not as the Cannons believed "a good time to just keep quiet." Irrespective of the disputed testimony which followed the Cannons' assertion that the Road was not "public," the Scotts' claim of right to use the Road, as well as the other evidence described above, created the adversity needed to begin the prescriptive period.

 Therefore, because no action was taken from the time the Cannons had notice of the Scotts' claim of right to the Road in 1972 until this lawsuit was filed in 1996, we hold that the Scotts established a prescriptive easement to use the Road across the Cannons' property. However, because the use that gave rise to the easement by prescription was for the limited purpose of ingress and egress to the Scotts' house, we hold that the Scotts' easement by prescription is limited to residential use and will not support a commercial activity. Specifically, the prescriptive easement will not support the use of the Road to maintain and service a Sprint telecommunications tower. While we sustain generally appellant's points of error regarding the issue of a prescriptive easement, we have expressly limited that easement to ingress and egress for residential purposes only. Consequently, there remains one issue as noted in an earlier footnote to be decided by the trial court: whether the Scotts may continue to provide child care out of their home or whether such activity is a commercial use and thus outside the scope of the prescriptive easement. We therefore remand this cause to the trial court for a determination of whether the Scotts' use of their home to provide child care constitutes a commercial activity outside the scope of the prescriptive easement herein established.

**Attorneys' Fees**

In their final points of error, the Scotts challenge the trial court's award of attorneys' fees pursuant to the Uniform Declaratory Judgments Act. Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 1986 & Supp.1998). Because we are remanding this cause for a determination of the scope of the prescriptive easement, we will also reverse and remand for reconsideration of attorneys' fees in light of our holding. To that extent, we sustain the Scotts' points of error regarding attorneys' fees.

**CONCLUSION**

Having held that the Scotts have obtained a prescriptive easement of ingress and egress across the Cannons' property for residential use, we reverse the trial court's judgment that no easement has been established on the Cannons' property and remand for a determination of the scope of the prescriptive easement. We further reverse and vacate the trial court's injunction prohibiting the Scotts from using the Road and remand the cause to the trial court for a reconsideration of the issue of attorneys' fees.