Opinion issued February 10, 2005

















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00756-CV
 __________
 
DENNIS BUFFINGTON, Appellant
 
V.
 
MARIA C. DELEON, Appellee
 

 
 
On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 0263807
 

 
 
O P I N I O N
          After a bench trial, the trial court granted the permanent injunction that Maria
C. De Leon, appellee, sought and declared that Brace Road, a dirt road, was a public
road. In four points of error, Dennis Buffington, appellant, argues that the trial court
erred because (1) the evidence does not support the trial court’s finding that Brace
Road is a public road, (2) DeLeon waived her right and is estopped from using Brace
Road, (3) the judgment is so vague as to the location and width of Brace Road as to
be unenforceable, and (4) the evidence does not support the award of $1100. We
reform the judgment and, as reformed, affirm. 
Background
          The property in question is located in an unrecorded subdivision known as
Braceland Manor Subdivision that was developed as a mobile home subdivision. The
developer, Deryl Watson, laid out the lots of Braceland Manor pursuant to a plat
prepared by a surveyor, Robert LaPlant, in March 1982. The plat showed Lots 1
through 7 of Braceland Manor lying north of Brace Road and Lots 8 though 14 lying
south of Brace Road. The plat also showed lots laid out for Hilltop Acres
Subdivision adjoining Braceland Manor to the west. One month later, the Warrens,
who owned the land dedicated to Braceland Manor Subdivision, and Watson signed
the “Restrictions for Braceland Manor Subdivision, Section I” (the “Restrictive
Agreement”) which contained an express dedication to the public of “all road and
streets that presently exist or as may hereafter be constructed” in Braceland Manor. 
Watson purchased the land from the Warrens, and, thereafter, Brace Road, the only
road in Braceland Manor, was constructed with a 60 foot right-of-way. James
McGee, the developer for the neighboring Hilltop Acres Subdivision, testified that
he constructed the road and ditches along Brace Road and that the residents of Hilltop
Acres use Brace Road for access to their property. 
          The Warrens foreclosed on their deed of trust after Watson defaulted on his
payments in 1986. In 1987, the Warrens deeded the southern portion of Braceland
Manor to McGee (Lots 8 and 9), Joseph and Danita Georgal (Lots 10, 11, and 12),
and Pat Altenburger (Lots 13 and 14). Buffington acquired Lots 13 and 14 from
Altenburger in 1999. At the time of the original conveyance to the southern
landowners, the Warrens executed a Private Roadway Easement granting a right of
access over Brace Road to the owners of the property lying south of Brace Road and
reserving the right to use of the road to the Warrens, who still owned Lots 1 through
7 north of Brace Road. The Warrens retained title to the northern lots until 2001,
when DeLeon purchased all seven northern lots.
          DeLeon testified that, when she signed the earnest money contract for the
property, she was on notice that Brace Road was a private road, but understood that
she could use it with the permission of the southern landowners. She also testified
that she sought Georgal’s permission, and he even described the type of culverts she
would need to install to access the roadway. Later the same day, all but one of the
southern landowners denied DeLeon access to the roadway. DeLeon subsequently
discovered in the Restrictive Agreement that Brace Road had been dedicated to the
public, and she hired someone to install six culverts along the northern part of Brace
Road to provide access to her property. DeLeon testified that, in July 2002, while the
culverts were being installed, Buffington sent a sheriff to tell DeLeon that he was
going “to take [her] to jail because [she] was trespassing.” She did not go to jail, but,
one week later, the culverts were removed and placed on her property. Georgal
testified that he removed DeLeon’s culverts because they “ruined the integrity of the
ditch” and caused flooding.


 
          On December 19, 2002, the trial court awarded DeLeon a temporary restraining
order, and, in February 2003, a temporary injunction was entered, and the case was
set for trial. After a two-day bench trial, the trial court granted DeLeon’s permanent
injunction and issued the following findings of fact and conclusions of law:
FINDINGS OF FACT
 
          1.       Plaintiff, Maria C. De Leon[,] is the owner of a 10.100 acre
tract of land situated in Harris County, Texas as described
in the deed admitted into evidence as Plaintiff’s Exhibit 12
A (“Plaintiff’s Property”).
 
          2.       Plaintiff’s Property is situated within the boundaries of
Braceland Manor Subdivision, Section 1, an unrecorded
subdivision in Harris County, Texas shown on Plat
admitted into evidence as Plaintiff’s Exhibit 1 A. (The
“Plat”)
 
          3.       The south line of Plaintiff’s Property abuts the north right
of way line of a 60 foot road right of way known as Brace
Road (hereinafter called “Brace Road”) shown on the Plat.
 
          4.       Brace Road was expressly dedicated to the public by
reason of restriction introduced into evidence as Plaintiff’s
Exhibit 4 A.
 
          5.       Brace Road was laid out and constructed as a 60 foot road
right of way in 1982 with drainage ditches on both sides of
the road surface within such sixty (60) foot right-of-way.
 
          6.       Brace Road was used by the public from approximately
1982 until the present time.
 
          7.       Plaintiff, De Leon, installed culverts and a driveway in the
drainage ditch along the north boundary of Brace Road for
access to Plaintiff’s Property in July, 2002.
 
          8.       Plaintiff’s culverts and driveway were improperly removed
by Defendants without her consent in July, 2002.
 
          9.       Plaintiff suffered damages as a result of the removal of the
culvert by the Defendants in the sum of $1,100.00.
 
          10.     Defendants have constructed permanent railroad ties that
obstruct Plaintiff’s access to the sixty (60) foot right-of-way of Brace Road.
 
          11.     The railroad ties obstruct the use of Brace Road by the
Plaintiff.
 
CONCLUSIONS OF LAW
 
          1.       Brace Road is declared to be a public road.
 
          2.       Plaintiff, Maria C. De Leon[,] is entitled to a permanent
injunction commanding the Defendants to desist and
refrain from damaging and working on Brace Road in such
a manner so as to damage such roadway or impede
Plaintiff’s access to Brace Road and from obstructing or
impeding in any way whatsoever Plaintiff’s use of Brace
Road and from impeding or disturbing Plaintiff’s access
from Brace Road to Plaintiff’s Property.
 
          3.       Plaintiff is entitled to a mandatory injunction commanding
the Defendants to remove that portion of the railroad ties
currently existing above the surface of Brace Road so that
such railroad ties do not obstruct ingress and egress by the
Plaintiff to Plaintiff’s Property.
 
          4.       Plaintiff, Maria De Leon, shall have and recover from
Defendants, jointly and severally, the sum of $1,100.00 as
actual damages.
 
          5.       Brace Road is a public road, 60 feet in width, abutting the
south boundary line of Plaintiff’s Property.
 
          6.       Plaintiff, Maria C. De Leon[,] shall recover from the
Defendants, jointly and severally, all costs expended in this
matter.

The defendants in the underlying case consisted of the owners of six of the seven lots
south of Brace Road. Buffington is the only defendant who appeals the trial court’s
judgment. 
Permanent Injunction
          The decision to grant or deny a permanent injunction is ordinarily within the
sound discretion of the trial court if a bench trial has been conducted, and appellate
review of the trial court’s action is limited to the question of whether such action
constituted a clear abuse of discretion. Crain v. Unauthorized Practice of Law
Comm. of the Supreme Court of Tex., 11 S.W.3d 328, 332 (Tex. App.—Houston [1st
Dist.] 1999, pet. denied). In a bench trial, the trial court, as factfinder, is the sole
judge of the credibility of the witnesses. Southwestern Bell Media, Inc. v. Lyles, 825
S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).
Public Road
          In point of error one, Buffington argues that the evidence is legally and
factually insufficient to support the trial court’s finding that Brace Road is a public
road.
          Our review of a legal sufficiency point requires us to consider only the
evidence and inferences that tend to support the finding, disregarding all evidence
and inferences to the contrary. Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). If there is any evidence of probative
force to support the finding, i.e., more than a mere scintilla, we will overrule the
issue. Id. In our review of the factual sufficiency of the evidence, we must consider
and weigh all of the evidence, and we will set aside a finding only if the evidence
standing alone is too weak to support the finding, or the finding is so against the great
weight and preponderance of the evidence that it is clearly wrong and unjust. Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Vannerson, 857 S.W.2d at 666.
          The Texas Supreme Court set out the basic principles for determining when a
road becomes a public road.
All roads which have been laid out and established by authority of the
commissioners’ courts are public roads. A road not originally
established under the statute may become public by long-continued use
and adoption as such by the county commissioners with the assent of the
owner or by prescription. A road may also become public, in the sense
that the public have the right to use it, by dedication.

Worthington v. Wade, 17 S.W. 520, 520-21 ( Tex. 1891) (internal citations omitted). 
“Dedication” of a private roadway is the setting aside of such roadway for the public
use for a passageway. Viscardi v. Pajestka, 576 S.W.2d 16, 18 (Tex. 1978). Once
dedicated, the owner of the land reserves no right to uses that are incompatible with
the full enjoyment of the public. Miller v. Elliott, 94 S.W.3d 38, 45 (Tex.
App.—Tyler 2002, pet. denied); Scott v. Cannon, 959 S.W.2d 712, 718 (Tex.
App.—Austin 1998, writ denied). Texas courts have recognized the doctrine that
dedication of land to public use need not be shown by deed or by public use of any
particular length of time:
It is sufficient if the record shows unequivocal acts or declarations of the
landowner, dedicating same to public use, and where others act on the
faith of such dedication, the landowner will be estopped to deny the
dedication, or to make any future use of the property inconsistent with
any purpose for which the land was dedicated . . . . [I]t is necessary that
there should be an appropriation of land by the owner to public use, in
the one case by some express manifestation of his purpose to devote the
land to the public use, in the other by some act or course of conduct
from which the law will imply such an event. 

Owens v. Hockett, 251 S.W.2d 957, 958 (Tex. 1952).
   
          Here, considering only the evidence and inferences that tend to support the
finding, we hold that the trial court did not abuse its discretion in finding that the
evidence was legally sufficient to conclude that Brace Road was public. On April 7,
1982, Watson and the Warrens executed a document entitled “Restrictions for
Braceland Manor Subdivision, Section I.” This document was created for the purpose
of establishing “conditions, restrictions and easements as covenants running with the
land binding upon the owner and upon future purchasers, or owners, their heirs and
assigns, and all parties or persons holding possession under such purchaser or future
owners in Braceland Manor Subdivision, Section I.” Paragraph 21 of this document
declared
There is hereby expressly reserved, retained, granted and dedicated unto
the public, a right-of-way and easement for purpose of ingress and
egress to this and any other tracts of land, forever, on, over and across
all roads and streets that presently exist or as may hereafter be
constructed.

(Emphasis added.)


 In 1982, Brace Road was declared public. Accordingly, the
evidence was legally sufficient to support the verdict .
          Furthermore, considering and weighing all of the evidence, we hold that the
trial court did not abuse its discretion in finding that the evidence was factually
sufficient to support a finding that Brace Road was public. In opposition to the
permanent injunction, Buffington argued that, because the county did not maintain
Brace Road, it could not be a public road. It is undisputed that the county does not
maintain Brace Road. Glenda Bucceri, road log coordinator for the Harris County
Public Infrastructure Department, testified that none of the roads in Braceland Manor
or Hilltop Acres are on the road log; therefore, the county has not accepted the roads
for maintenance.


 Bucceri further testified that the county has never expressly or
formally accepted Brace Road as a dedicated public roadway. If the county “accepts”
a roadway, it must maintain it. Bucceri explained that, even if a roadway is dedicated
to the public, if it is not built in accordance with county specifications, the county will
not accept it for maintenance.
          James McGee, the sole southern landowner who gave DeLeon permission to
use Brace Road, testified that he developed Hilltop Acres and provided the funding
for Watson to develop Braceland Manor. McGee explained that the landowners were
responsible for maintaining Brace Road. He testified that the landowners considered
trying to improve the road to meet county specifications, but the landowners decided
that they did not have enough money to complete the project.    McGee testified that
he built Brace Road to provide ingress and egress to Hilltop Acres that, otherwise,
would be landlocked.


 McGee testified that “Everybody. I mean everybody —
delivery people, dump trucks by the dozens” used Brace Road after McGee
constructed it in 1983. The owners in Hilltop Acres used the road because “that was
the only way [of] ingress into their properties.” McGee testified that people were
using Brace Road “all the way through for 20 years, no stop.” When asked how
Brace Road was dedicated to the public, McGee responded, “That was all agreed with
the Warrens before I signed any contract to buy any land.” The defendants’ attorney
repeatedly reminded McGee that he was not a party to the original deed. McGee
insisted that he was instrumentally involved in the development of Braceland Manor,
despite the fact that his name does not appear on any deed.


 
          Buffington further alleged that Brace Road’s earlier declaration as public had
been overridden by a subsequent easement executed in 1987. In 1982, the Warrens
dedicated the road to the public when they sold the property to Watson. In 1986,
Watson defaulted on his payments, and the Warrens foreclosed on the property. On
January 26, 1987, the Warrens executed a Private Roadway Easement granting a right
of access over Brace Road to the owners of the property lying south of Brace Road
and reserving the right to use of the road to the Warrens. Buffington argues that the
1987 easement replaced the earlier public dedication because Watson defaulted on
the property. However, the Warrens reserved no right to dedicate the land to uses that
were incompatible with the full enjoyment of the public. See Miller, 94 S.W.3d at 45;
Scott, 959 S.W.2d at 718. 
          We hold that the trial court did not abuse its discretion in finding that the
evidence was legally and factually sufficient to support the dedication of Brace Road
as a public road.
          We overrule point of error one.
Waiver
          In point of error two, Buffington argues that De Leon waived her right to use
Brace Road and is estopped from using the road.
          Waiver is an affirmative defense and is proven by showing a party’s
“intentional relinquishment of a known right or intentional conduct inconsistent with
claiming that right.” Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex. 2003);
Robinson v. Robinson, 961 S.W.2d 292, 299 (Tex. App.—Houston [1st Dist.] 1997,
no writ). It is the movant’s burden to show waiver. See El Paso Prod. Co. v. Valence
Operating Co., 112 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied). In determining if a waiver has in fact occurred, a court must examine the
acts, words, or conduct of the parties, and it must be “unequivocally manifested” that
it is the intent of the party to no longer assert its right. Robinson, 961 S.W.2d at 299. 
          Buffington contends that DeLeon waived her complaint when she entered into
the earnest money contract with the Warrens in April 2001. Under the “Special
Provisions” paragraph on the earnest money contract, the following statement was
handwritten onto the contract:
Buyer is purchasing property as is and understands that the road along
the south property line is a private road owned by other land owners. 
Access to the property will have to be obtained by buyer from the
owners of the private road or from the county off the county road which
is adjacent to the east property line.

DeLeon conceded that, when she signed the earnest money contract, she was on
notice that she must get permission to use Brace Road. She testified that she spoke
with the southern lots’ landowners, and that all but one refused to give her permission
to use the road. However, DeLeon testified that, at the time she signed the earnest
money contract, she was unaware of the existence of the earlier dedication of the
roadway to the public. As such, she did not intentionally relinquish a known right.
          We overrule point of error two.
Vague
          In point of error three, Buffington contends that the judgment enjoining
Buffington from obstructing Brace Road is so vague as to the location and width of
the road as to be unenforceable.
          The pertinent part of the judgment states that
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that
Brace Road is hereby declared to be a public road and shall continue to
be a public road for the benefit of the public and that Brace Road is a 60
foot right-of-way existing along the north sixty feet (60') of the Property
owned by Defendants herein in Braceland Manor subdivision, and
which sixty (60') foot road abuts the South boundary of Plaintiff’s
Property.

For clarification purposes, we reform the judgment to incorporate the language found
in the private roadway easement created on January 26, 1987. The judgment will be
reformed to state as follows:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that
Brace Road is hereby declared to be a public road and shall continue to
be a public road for the benefit of the public and that Brace Road has as
its north boundary line the north boundary line of the Property, said
right -of-way and easement being an area thirty (30') feet on either side
of a centerline described as follows: Beginning at the most southeasterly
point of the herein described Property: THENCE N 00◦ 03' 33" W a
distance of 50.43 feet to the beginning point of the herein described
centerline; THENCE N 35◦ 26' 37" W a distance of 272.99 feet to a
point; THENCE N 89◦ 57' 37" W a distance of 13333.23 feet to a point
on the west boundary line of the Property, provided, however, that, at
the beginning point of said centerline, where the same intersects the
west right-of-way line of Bauer Road, said easement shall extend and
cover an area 50.43 feet on either side of said centerline. 
 
We reform the judgment accordingly, and, as reformed, overrule point of error three.
Damages
          In point of error four, Buffington argues that the evidence does not support the
award of $1,100 in damages.
          The uncontroverted testimony established that DeLeon paid $500 to have six
culverts installed. She testified that she paid $100 each for the culverts. Georgal
acknowledged that he removed the culverts without DeLeon’s permission, and
DeLeon testified that the culverts were damaged when Georgal removed them. 
Buffington argues that DeLeon should re-use the culverts Georgal removed based on
DeLeon’s testimony that they were not all damaged. However, the trial court was
entitled to resolve any conflicts in DeLeon’s testimony. See Lyles, 825 S.W.2d at
493. Furthermore, DeLeon testified that Georgal dug the ditches deeper, making it
more difficult for her to drive on Brace Road. She testified that, on one occasion, she
got stuck in the mud trying to enter her property from Brace Road through the ditches
Georgal had created. DeLeon testified that she ultimately had to have the
transmission replaced in her car due to the incident.
          We hold that the evidence is legally and factually insufficient to support the
award of $1,100 in actual damages. 
          We overrule point of error four.
Conclusion
          We reform the judgment to reflect the metes and bounds description of the
property, and, as reformed, affirm the trial court’s judgment.
 
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.