Opinion issued July 3, 2008 
















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00763-CV

__________


LEELAND RINN, Appellant


V.


MAX WENNENWESER, Appellee






On Appeal from the 155th District Court

Austin County, Texas

Trial Court Cause No. 2004V-0080






MEMORANDUM OPINION

 Appellant, Leeland Rinn, challenges the trial court's rendition of judgment in
favor of appellee, Max Wennenweser, in Rinn's suit against Wennenweser seeking
an easement over Wennenweser's property. In five points of error, Rinn contends
that the trial court's judgment "fails to sufficiently describe the awarded easement,"
the trial court erred in finding that the "1901 easement" was a "valid and subsisting
easement," the trial court erred in entering its judgment because an indispensable
party was not before the court, and the trial court's failure to find an easement by
necessity or easement by prescription over the requested route (herein referred to as
the "requested easement") was contrary to the great weight and preponderance of the
evidence. 

 We affirm. 

Factual and Procedural Background


 In his original petition, Rinn alleged that, in 1874, a large tract of land was
partitioned into eight separate tracts, which were then identified as timber tracts one
through four and prairie tracts one through four, and that an easement was established
over all of the tracts for the mutual benefit of the owners of these tracts. Rinn
subsequently acquired ownership of timber tract three and Wennenweser acquired
ownership of timber tract four and prairie tract four. Rinn brought suit against
Wennenweser, alleging that he was entitled to the continued use of an original
easement that provided access to his property, and he sought a declaratory judgment
that the original easement remained valid. Alternatively, Rinn alleged the existence
of an easement by necessity, prescription, or estoppel.

 At trial, Rinn sought to establish an easement somewhat different than the 1874
easement referenced in his petition. Specifically, Rinn sought an easement to use a
road that crossed over Wennenweser's prairie tract four and ultimately approached
a gate located on the southern portion of Rinn's timber tract three. Rinn claimed that
he had used this access road over Wennenweser's prairie tract four for a period of 50
years. 

 Wennenweser disputed Rinn's requested easement, instead arguing that Rinn
had access to his timber tract three from its northern border through an easement that
had been created in 1901 pursuant to a settlement agreement between all of the tract
owners. Wennenweser presented evidence that the 1901 easement allowed the timber
tract owners, including Rinn, to access their property by a road that extended the
northern border of these tracts and that ultimately led to a public road named Star Hill
Road. However, other evidence indicated that, at some point after the creation of the
1901 easement, Star Hill Road had been improved and straightened, leaving a short
gap between the location of the eastern end of the actual 1901 easement and the
improved Star Hill Road.

 The trial court, in its judgment, found that the 1901 easement was "a valid and
subsisting easement in favor of [Rinn] for access to and egress from" his property. 
The trial court further found that because the location of Star Hill Road had been
moved in an eastward direction, a necessity existed to create an easement between
Star Hill Road, as it existed after it was improved and straightened, and the
southeastern end of the 1901 easement "in order that [Rinn] have access to and egress
from [Rinn's] property extending the complete distance between [Rinn's] property
and the present location of Star Hill Road along the route set out in the Amended
Easement." Accordingly, the trial court ordered that Rinn be awarded an easement
to account for the gap between the improved Star Hill Road and the 1901 easement. 
This awarded easement crossed the northern border of Wennenweser's timber tract
four to the southeastern end of the 1901 easement. The trial court, after detailing the
amended easement, ordered that Rinn was not entitled to any other easements across
Wennenweser's property, thus denying Rinn the requested easement to use a road
crossing over Wennenweser's prairie tract four to the southern border of Rinn's
timber tract.

Description of Easement

 In his first point of error, Rinn contends that the trial court's judgment "fails
to sufficiently describe the awarded easement." Rinn argues that "the easement is
fatally defective because it is impossible to determine at least one of the ending points
of the easement," and Rinn asserts that nothing in the judgment or attached
documents "allows for the location of the southeastern end of the 1901 easement." 
Rinn further argues that "the metes and bo[u]nds . . . are inadequate" because the
surveyor used "indefinite marks" to define the easement.

 In the trial court, Rinn never argued that the description of the 1901 easement
was insufficient because it is impossible to discern the southeastern end of the 1901
easement. To the extent that Rinn is attempting to challenge the sufficiency of the
description of the 1901 easement, we hold that he has waived that issue for our
review. See Tex. R. App. P. 33.1(a). 

 We further note that the trial court's judgment expressly incorporated a metes
and bounds description of the granted easement as well as a plat showing the exact
location of the granted easement. The judgment also incorporated the real property
records for the relevant tracts of land as well as the deed records evidencing the 1901
easement. Rinn has not cited any evidence in the record, nor has he alleged, that the
references to the general locations in the easement contradict the otherwise sufficient
description. We hold that the judgment provided a sufficient description of the
awarded easement. See Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d
254, 257 (Tex. 1984) (indicating that metes and bounds description is sufficient);
Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, 849 (1946) (explaining that real
property description in judgments must be "so definite and certain . . . that the land
can be identified with reasonable certainty" and that judgment may refer to other
writings to provide required certainty). 

 We overrule Rinn's first point of error.

The 1901 Easement

 In his second point of error, Rinn contends that the trial court erred in finding
that the 1901 easement was a "valid and subsisting easement." Rinn asserts that the
1901 easement expired by its own terms. However, as noted above, Rinn never
challenged the validity of the 1901 easement during trial, and he has waived that issue
for our review. See Tex. R. App. P. 33.1(a). Morever, Rinn's argument that the 1901
easement is no longer valid is based upon the conditional language in the 1901
easement. However, because the validity of the 1901 easement was not specifically
raised in the trial court, the record does not contain evidence establishing that the
conditional language in the 1901 easement was satisfied and, thus, Rinn did not prove
that the 1901 easement expired by its own terms.

 We overrule Rinn's second point of error.

Indispensable Party

 In his third point of error, Rinn contends that the trial court erred in entering
its judgment because an indispensable party was not before the court. See Tex. R.
Civ. P. 39. The indispensable party, who is referred to by Rinn in the briefing only
as "Mr. Parker," allegedly owned timber tract two, which is a tract of land bordered
on the west by Rinn's timber tract three, on the east by Wennenweser's timber tract
four, and on the north by the 1901 easement. (1) Thus, Mr. Parker allegedly owns a
timber tract that is located in between the timber tracts owned by the parties and that
is encumbered, along its northern border, by the 1901 easement, which was created
to allow the owners of the timber tracts to access their property from Star Hill Road.

 As framed by Rinn himself, his third point of error is dependent upon his
contention that the 1901 easement had expired by its own terms and was no longer
valid. Based on Rinn's theory on appeal, the owner of timber tract two, who Rinn
alleges to be Mr. Parker, would be indispensable because, if the 1901 easement had
expired, the easement awarded to Rinn by the trial court would necessarily have to
encumber timber tract two. However, we have held that Rinn did not challenge the
validity of the 1901 easement in the trial court, and Rinn cannot raise this issue for
the first time on appeal. See Tex. R. App. P. 33.1(a). The easement awarded by the
trial court, which only accounts for the gap between the southeastern end of the 1901
easement and the improved Star Hill Road, does not encumber timber tract two and,
instead, the awarded easement encumbers only Wennenweser's timber tract four. 
Wennenweser, who was before the trial court, does not complain on appeal about the
easement by necessity granted by the trial court that encumbers his timber tract. Thus,
we hold that nothing in the record support's Rinn's assertion that the trial court erred
in entering its judgment because an indispensable party was not before the court.

 We overrule Rinn's third point of error.

Easement by Necessity and Prescription

 In his fourth and fifth points of error, Rinn contends that the trial court's failure
to find an easement by necessity or prescription was "contrary to the great weight and
preponderance of the evidence." 

 When a party attacks the factual sufficiency of an adverse finding on an issue
on which it has the burden of proof, it must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). In reviewing a claim that a finding
is against the great weight and preponderance of the evidence, we consider and weigh
all of the evidence and may set aside the verdict only if the finding is so against the
great weight and preponderance of the evidence that it is clearly wrong and unjust.
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We note that the trial court acts as
fact finder in a bench trial and is the sole judge of the credibility of witnesses. See
Murff v. Murff, 615 S.W.2d 696, 700 (Tex. 1981); HTS Servs., Inc. v. Hallwood
Realty Partners, L.P., 190 S.W.3d 108, 111 (Tex. App.--Houston [1st Dist.] 2005,
no pet.).

Easement by Necessity

 To establish an easement by necessity, Rinn was required to show (1) unity of
ownership before severance; (2) that access is a necessity and not a mere
convenience; and (3) the necessity existed at the time of severance of the two estates.
Koonce v. Brite Estate, 663 S.W.2d 451, 452 (Tex. 1984); Crone v. Brumley, 219
S.W.3d 65, 68 (Tex. App.--San Antonio 2006, pet. denied). 

 Focusing on the second element, we note that the trial court awarded Rinn an
easement by necessity to connect the gap between the 1901 easement and the
improved Star Hill Road. Thus, the judgment plainly affords Rinn access to his
property. Rinn, however, asserts that any easement by necessity should be located
across prairie tract four because all of the relevant landowners impliedly consented
to the location of this easement. Rinn also complains that, even with the full use of
the awarded easement, a creek bisecting the northern and southern portions of his
property renders it "practically impossible" to access the southern portion of his
property with hay-baling equipment, which Rinn contends is the only "economially
feasible means to use the south half of [his] property." 

 At trial, the parties hotly disputed whether the location of Rinn's requested
easement across Wennenweser's prairie tract four was based on necessity or mere
convenience. Rinn conceded that he had constructed a concrete low water crossing
on his property that crossed the creek bisecting his property, but Rinn testified in his
deposition that the ability to use the low-water crossing was extremely limited by
high water levels throughout the majority of the year. However, during trial, when
presented with pictures of this low-water crossing, Rinn equivocated as to whether
it was possible to drive a pick-up across this low-water crossing at times of normal
water. Rinn's wife also agreed that she had crossed the creek in a pick-up using the
low-water crossing several times. 

 Wennenweser, on the other hand, testified that he had seen Rinn's low water
crossing and that it was "absolutely" possible to haul hay across this low-water
crossing. Wennenweser described it as a "nice crossing." Photographs of the low-water crossing were introduced into evidence, and one of these photographs depicts
a pick-up or sports-utility vehicle crossing the low-water crossing, as verified by one
of Wennenweser's witnesses, during times of normal and usual water flow. Curtis
Rinn, who is Rinn's first cousin and who owns property bordering Rinn's timber
tract, also testified that he had seen "hay making equipment" using Rinn's low-water
crossing. Additionally, Curtis Rinn testified that the same creek that bisected Rinn's
property bisected his property. Curtis Rinn stated that he had constructed and used
his own low-water crossing to cross the same creek and access the southern portion
of his property, he was able to haul hay with a trailer across his low-water crossing,
he could drive a pick-up across his low-water crossing, he had to occasionally clean
his low-water crossing after a high water event, he would spend approximately one
hour to clean his low-water crossing on those occasions, he spent no more than $100
a year to maintain his low-water crossing, and his low-water crossing was impassable
because of high water no more than 10 days a year. Curtin Rinn further stated that
his low-water crossing was in close proximity to Rinn's property-- approximately 20
to 40 feet away from Rinn's property line. Based on Curtis Rinn's testimony, the trial
court could have chosen to disregard Rinn's evidence regarding the ability and ease
of maintaining and using a low-water crossing over the creek that bisected Rinn's
property.

 The evidence supported an implied finding by the trial court that Rinn's request
for an easement to access his property by using a road that crossed Wennenweser's
prairie tract four, as opposed to the 1901 easement as modified by the trial court's
judgment, was based on mere convenience and not necessity. (2) Accordingly, we hold
that the trial court's decision not to find an easement by necessity over
Wennenweser's prairie tract four was not against the great weight and preponderance
of the evidence so as to be clearly wrong and unjust. See Wilson v. McGuffin, 749
S.W.2d 606, 609 (Tex. App.--Corpus Christi 1988, writ denied) (noting that
"[n]early every road can be impassable at one time or another, which does not render
an alternative route a necessary one other than for a limited time" and concluding that
easement requested over "[t]he high ground road was a mere convenience for most
of the time, and cannot be said to amount to a necessary one in the sense of an
easement by necessity").

Easement by Prescription

 An easement by prescription rests on the claimant's adverse actions under a
color of right. Mack v. Landry, 22 S.W.3d 524, 531 (Tex. App.--Houston [14th
Dist.] 2000, no pet.) (citing Scott v. Cannon, 959 S.W.2d 712, 721 (Tex.
App.--Austin 1998, pet. denied)). "A person acquires a prescriptive easement by the
open, notorious, continuous, exclusive, and adverse use of someone else's land for
ten years." See id. (citing Brooks v. Jones, 578 S.W.2d 669, 673 (Tex. 1979)). "The
hostile and adverse character of the use necessary to establish an easement by
prescription is the same as that which is necessary to establish title by adverse
possession." Id. (citing Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622, 626 (1950)). 
In determining whether a claim is hostile, we consider "whether the adverse
possessor's use, occupancy, and possession of the land is of such nature and character
as to notify the true owner that the claimant is asserting a hostile claim to the land." 
Id.

 In support of a finding of exclusivity and hostility, Rinn contends that the
evidence "demonstrated that [he] used the property with an ownership interest, or a
feeling of entitlement to use the property," and he also asserts that he made
improvements to the property. Rinn further asserts that "there has been no persuasive
evidence that the easement was used by anyone other than Rinn or his employees"
and that the evidence demonstrated that "the sole use of the easement was for access
to Rinn's property." The evidence does not support Rinn's assertions.

 Although Rinn claimed that he had exclusive use of the easement, Rinn himself
agreed that he had never excluded Wennenweser or Wennenweser's predecessors in
title from using any road on Wennenweser's property. In contrast to Rinn's
testimony, Wennenweser denied that Rinn had used the requested easement
exclusively, and Wennenweser stated that he used the road located on the requested
easement to access the western end of his property. Wennenweser also testified that
Rinn had used the road only with his and his predecessors' permission. To the extent
Rinn and Wennenweser presented conflicting testimony on Rinn's exclusive and
adverse use of the road, the trial court, as fact finder, was entitled to resolve that
conflict against Rinn. See Murff, 615 S.W.2d at 700. Furthermore, although Rinn
claimed to have improved the property, Wennenweser stated that he, not Rinn, had
hired a contractor to haul gravel to the road located on the requested easement. He
further stated that Rinn was "dreaming" up his claim that he had improved the road. 
Finally, although Rinn claimed to have a key to access the gate on the requested
easement, Wennenweser denied that Rinn ever had a key. Although Wennenweser
subsequently conceded that he had loaned a key to Rinn on one occasion,
Wennenweser maintained that, in order to access the road, Rinn always had to call
him first.

 In sum, the evidence supported an implied finding by the trial court that Rinn's
use of the requested easement was not exclusive, adverse, or hostile. See Mack, 22
S.W.3d at 532 (stating that "[j]oint continuous use alone without an independent
hostile act attempting to exclude all other persons, including the property owner from
using the roadway, is not sufficient to establish an easement by prescription" and
holding that plaintiffs had failed to establish "requirement of hostility to transform
permissive use of an easement into an adverse use"). Accordingly, we hold that the
trial court's decision to not find an easement by prescription over Wennenweser's
prairie tract four was not against the great weight and preponderance of the evidence
so as to be clearly wrong and unjust. (3)

 Conclusion


 We affirm the judgment of the trial court.


 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Bland.
1. Wennenweser, in his brief and at oral argument, contended that the current owner of
the timber tract in question is a "Mr. Fuller" not a "Mr. Parker."
2. At argument, Rinn relied on Daniel v. Fox, 917 S.W.2d 106, 111 (Tex.
App.--Houston [1st Dist.] 1996, writ denied) to support his claim that access to his
property through the 1901 easement did not deprive him from an easement by
necessity over Wennenweser's prairie tract four. In Daniel, the appellant argued that
because the appellees were able to reach their western portion of their ranch through
the "west easement," appellees were not entitled to an easement by necessity to reach
the eastern portion of their tract. Id. at 112. The court summarized evidence
establishing that it would have been prohibitively expensive for the appellees to
construct a bridge on their property in order to access the eastern portion of their tract. 
Id. Here, the record does not contain any evidence establishing that it would be
prohibitively expensive for Rinn to make improvements to the current low-water
crossing in order to improve his access to the southern portion of his property. 
Moreover, the trial court heard conflicting evidence that hay-baling equipment could
already use the current low-water crossing during the majority of the year to access
the southern portion of Rinn's land. 
3. In support of his claim for an easement over prairie tract four, Rinn cites Scott v.
Cannon, 959 S.W.2d 712, 721 (Tex. App.--Austin 1998, pet. denied). However,
Scott is factually distinguishable. The Scotts filed an affidavit in the real property
records claiming an easement to a right to use a road. Id. at 722-23. The Cannons,
the owners of the land on which the alleged easement was located, discovered the
affidavit, at which time the Scotts reaffirmed their position to the Cannons that they
had the right to use the road. Id. The Cannons remained "quiet" in response to this
assertion, and the Scotts continued to use and maintain the road. Id. The court noted
that there was no evidence that, after this date, the Cannons had given the Scotts
permission to continue using the road or that the Scotts even looked to the Cannons
for permission. Id. The court held that the Scotts' "distinct and positive assertion"
was sufficient to "transform permissive use of an easement into an adverse use." Id.
at 723. In this case, Wennenweser offered testimony that Rinn has always used the
requested easement only with the permission of Wennenweser or his predecessors.