Michael R. MURPHY and Deborah
A. Johnson, Appellants,

v.

John LONG and Wife, Ruth
Long, Appellees.

No. 08–03–00494–CV.

Court of Appeals of Texas,
El Paso.

May 12, 2005.

Rehearing Overruled June 15, 2005.

Monty Kimball, Alpine, TX, for Appellants.

G. Ben Bancroft, Bancroft & Mouton, Big Spring, TX, for Appellees.

Before Panel No. 5 McCLURE, CHEW, D., and CHEW, L., JJ. (sitting by assignment).

## OPINION

ANN CRAWFORD McCLURE, Justice.

Michael R. Murphy and Deborah A. Johnson[1] appeal from a judgment awarding John and Ruth Long an easement, reliance damages, and attorney's fees. Finding no error, we affirm.

### FACTUAL SUMMARY

Michael Murphy and John Long worked together and they and their wives became close friends. They contemplated buying property together and included a third couple, Rocky Beavers and Whit Watkins, in their plans. In 1997, the three couples purchased adjoining properties located along Highway 118 outside of Fort Davis from The Nature Conservancy of Texas, an organization dedicated to preserving the natural and scenic condition of the land. TNC required them to agree to a "Conservation Easement" to ensure that the property would be retained predominantly in its natural and scenic condition. The easement required that roads were to be constructed in such a manner as to cause the least disturbance to the scenic beauty. The three couples also entered into a Reciprocal Easement Agreement for the right to use the road which ran from Highway 118 across all three tracts of land

---

1. We will refer to Murphy and Johnson as "the Murphys" because that is how the parties have referred to them in the trial court and on appeal.

to a common pen area. Initially, they operated the properties jointly and had access to some pens in a common area. They engaged in business activities such as leasing some of the pastures, and they shared in the revenues and expenses. They discussed forming a partnership to operate the three properties but did not formalize their agreement. After Beavers and Watkins indicated they did not want to be further involved, the Longs and the Murphys submitted an updated grazing and management plan to TNC. The two couples also shared the cost of drilling a water well on the Murphy property.

The Longs discussed with the Murphys their need for a road easement from the common pens across the Murphy land to the Longs' future homesite. The Murphys agreed to grant a written easement similar to the Reciprocal Easement Agreement. The couples discussed several potential routes and eventually agreed upon one. They also agreed to share in the cost of building the road and continued maintenance based upon the *pro rata* use of the road. Based upon the site chosen by the Murphys for their home, their *pro rata* use of the road would have been 12 percent. The Longs had the 1.03 mile road constructed using native caliche, the same material used to build the Reciprocal Easement road. The Murphys paid 12 percent of the $10,000 it cost to construct the road based on the planned site of their home. When the Murphys later changed the location of their home site, they utilized a greater percentage of the road but did not pay the Longs any additional money. The Longs specifically relied upon the Murphys' promises to grant them a written easement and to pay their *pro rata* share of the road costs.

After the road was built, the Longs received written notification from TNC on July 27, 1999 that the road violated the Conservation Easement. TNC's primary objection was the color of the road. Mr. Long notified Mr. Murphy of the objection. A few weeks later, the Longs submitted a written proposal to TNC to resolve the problem by reseeding the roadsides with native grasses and vegetation, and perhaps by coloring the road. The Longs subsequently built up the edges of the road and reseeded the berm edge of the roadway but did not change the color due to the substantial expense. On December 14, 2000, TNC sent a letter to the Longs reflecting that it no longer had any objections to the road given the changes made. Nevertheless, on December 29, 1999, the Murphys sent a letter to the Longs contending that they had agreed to the road easement based on the Longs' promise to obtain TNC approval of the road and that prior approval apparently had not been obtained. Their letter also referenced a dispute between the parties about how costs to maintain the road would be shared.

The disputes could not be resolved and the Longs ultimately filed suit alleging various tort and contract causes of action based on alleged agreements regarding the use of their properties. They also sought a declaratory judgment. The Murphys raised the statute of frauds as an affirmative defense and filed counterclaims alleging fraud, misrepresentation, and breach of fiduciary duty. A jury found that the Murphys breached their agreement with the Longs to drill a water well on the Murphy property for their joint use, and awarded damages in the amount of $3,877. The jury also found that the Longs did not have an enforceable contract with the Murphys to provide them with a written easement and did not misrepresent or conceal a material fact regarding their intention to grant a road easement, but it determined that the Longs substantially relied on a promise by the

Murphys to provide a written road easement granting the Longs access to their home site and that this reliance was foreseeable by the Murphys. It awarded damages to the Longs in the amount of $1,450. The jury found against the remaining claims, including the counterclaims asserted by the Murphys.

The trial court awarded judgment to the Longs in accordance with the jury's answers. It further declared that the Longs and their heirs, successors, and assigns were entitled to a road easement across the Murphy's land from the reciprocal easement to the Longs' home site. The court awarded attorney's fees to the Longs, as the prevailing parties, in the amount of $10,000.[2] On appeal, the Murphys restrict their arguments to the award of the road easement and attorney's fees.

## EASEMENT BY ESTOPPEL

In Issue One, the Murphys challenge the legal and factual sufficiency of the evidence to support the award of the road easement. The easement by estoppel is based on the jury's finding that the Longs substantially relied on the Murphy's promise to provide a written road easement and that their reliance was reasonably foreseeable. We will not review the legal or factual sufficiency of the evidence to support these specific findings because the Murphys do not complain that the evidence does not support them. Instead, they focus on the absence of two findings which they claim are necessary to support the award, namely, that a written but unsigned easement existed at the time they promised to give the Longs an easement

and that a vendor-vendee relationship existed between the parties.

### Existence of Written but Unsigned Easement

■ Section 26.01 of the Texas Business and Commerce Code provides that a promise or agreement for the sale of real estate is not enforceable unless the promise or agreement, or a memorandum of it, is in writing and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. Tex.Bus. & Comm.Code Ann. § 26.01 (Vernon 2002). Likewise, the Statute of Conveyances found in Section 5.021 of the Texas Property Code provides:

A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing.

TEX.PROP.CODE ANN. § 5.021 (Vernon 1984).

The easement which the Murphys promised to grant is one which attaches to the land itself and passes with it, and thus, is an easement appurtenant to the land. *See Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196, 203 (Tex.1963). As such, it is an interest in land which requires a writing to create or transfer. TEX.PROP.CODE ANN. § 5.021; *Drye,* 364 S.W.2d at 203; *West Beach Marina, Ltd. v. Erdeljac,* 94 S.W.3d 248, 264 (Tex.App.-Austin 2002, no pet.). The Longs, however, rely on the doctrine of easement by estoppel, or estoppel *in pais*[3] as it is sometimes called, to

---

2. The parties had agreed that if the jury's verdict justified an award of attorney's fees, the prevailing party would be awarded attorney's fees in the range of $20,000 to $25,000. The court initially awarded $22,500 but reduced the attorney's fees to $10,000 following a hearing on a motion for new trial.

3. Estoppel *in pais* means: The doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had. BLACK'S LAW DICTIONARY 495(5th Ed.1979).

avoid the statutes of frauds and conveyances. *See Drye*, 364 S.W.2d at 209 (noting that this doctrine is one exception to the requirement of a writing to create an easement).

More than 125 years ago, the Supreme Court first articulated the rationale for the doctrine of easement by estoppel:

> The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel *en pais*. As 'where he has by parol agreement granted a right to such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.'

*Harrison & Co. v. Boring*, 44 Tex. 255, 267–68, 1875 WL 7685 (1875). The doctrine essentially holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate. *Stallman v. Newman*, 9 S.W.3d 243, 246 (Tex.App.-Houston [14th Dist.] 1999, pet. denied), *citing Drye*, 364 S.W.2d at 209. It is grounded on the notion that justice forbids one to gainsay his own acts or assertions. *Wallace v. McKinzie*, 869 S.W.2d 592, 595 (Tex.App.-Amarillo 1993, writ denied). Estoppel arises when one is not permitted to disavow his conduct which induced another to act detrimentally in reliance upon it. *Id.*

The extent of the doctrine of estoppel *in pais* has not been clearly defined and its application depends on the unique facts of each case. *Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex.1979); *Drye*, 364 S.W.2d at 203; *Stallman*, 9 S.W.3d at 246. Three elements are necessary to the creation of an easement by estoppel: (1) a representation, communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication to his detriment. *Stallman*, 9 S.W.3d at 246; *see Storms*, 579 S.W.2d at 451 n. 3; *Drye*, 364 S.W.2d at 209–10.

Citing *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex.1972), the Murphys maintain that the jury's findings do not support the award of an easement by estoppel because the jury was not asked to—and did not—find that a written easement agreement existed at the time of the promise. Consequently, they argue that the Longs have failed to establish this exception to the statute of frauds.

In *"Moore" Burger*, the plaintiff leased property from the City of Austin and built a restaurant on it. *Id.* at 937. The Ing estate owned a small tract of land which adjoined the City tract. Dowd and Craus were in the business of buying property and selling it to oil companies for service station sites. They obtained an option from the Ing estate to buy the property. At the same time, the City became interested in selling the tract it had leased to "Moore" Burger and it informed the company president, W.D. Scallon, of its wishes. Scallon notified the City that "Moore" Burger wished to bid on the property and he took steps to secure financing. Dowd and Craus approached Scallon and told him of their plans to buy the two tracts of land. *Id.* at 937–38. They represented to him that they would construct a new building on the property and lease it to "Moore" Burger for twenty years. Scallon agreed to their plan and as a result did not bid on the property. A lease was drawn up by Craus's attorney and after changes were made by Scallon's attorney, Scallon signed it. Despite their promises, Craus and Dowd did not sign the lease. It later

came to light that the entire time these negotiations were ongoing, Dowd and Craus had a contract to sell the property to an oil company which planned to build a service station for Phillips Petroleum. Phillips subsequently bought the contract of sale and refused to honor the lease with "Moore" Burger. *Id.* at 938. "Moore" Burger filed suit for breach of contract and the defendants raised the statute of frauds as a defense. *Id.* at 935. The trial court granted summary judgment in favor of the defendants on their affirmative defense and the court of appeals affirmed. *Id.* The Supreme Court reversed, finding fact issues with respect to "Moore" Burger's claims of promissory estoppel. *Id.* at 938. Citing *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921), the court concluded that enforcement of the statute of frauds under these circumstances would amount to fraud. *Id.* at 938. The court further found that Phillips had constructive notice or would have known of "Moore" Burger's lease had it made a reasonable inquiry. *Id.* at 939. In its opinion on rehearing, the Supreme Court clarified that it had not applied the doctrine of promissory estoppel to an oral promise but had instead applied it to the defendants' promise to sign a written agreement already in existence. *Id.* at 940 (op. on reh'g).

The Supreme Court followed *"Moore" Burger* in *Nagle v. Nagle*, 633 S.W.2d 796 (Tex.1982). The divorce decree required Mr. Nagle, an attorney, to pay the monthly mortgage payment on the Nagle residence and Mr. Nagle retained his one-half interest in the residence. *Id.* at 798. Ms. Nagle filed a contempt motion after Mr. Nagle missed four child support payments. On the morning of the scheduled hearing on the motion, Ms. Nagle agreed to forego the hearing and waive one month of child support in consideration for Mr. Nagle's one-half interest in the residence. Mr. Nagle also agreed to pay the child support payments he had missed and to increase his future child support payments in an amount sufficient to pay the mortgage payment. He returned to his law office to draft a deed conveying his interest but shortly thereafter announced a change of heart and he refused to convey his interest in the property. Ms. Nagle did not reschedule her contempt motion and Mr. Nagle subsequently paid the past-due child support payments and continued to make the monthly mortgage payment. Ms. Nagle filed suit, alleging common law fraud and promissory estoppel. She sought specific performance of the agreement or damages resulting from Mr. Nagle's failure to perform. A jury found in favor of Ms. Nagle and awarded her damages equal to the amount of Mr. Nagle's interest in the residence. The court of appeals affirmed, finding that Ms. Nagle had established her cause of action for common law fraud. However, it also concluded that her promissory estoppel theory of recovery would not support the judgment. *Nagle v. Nagle*, 617 S.W.2d 811 (Tex.Civ. App.-Houston [14th Dist.] 1981). The Supreme Court reversed and rendered a take nothing judgment. Citing *"Moore" Burger*, the court held that Ms. Nagle's failure to obtain a jury finding that Mr. Nagle promised to sign an instrument which complied with the statute of frauds precluded her recovery under the promissory estoppel doctrine. *Nagle*, 633 S.W.2d at 800. The court further held that Ms. Nagle did not establish her cause of action for common law fraud, presumably because the facts of the case did not fall within the exception discussed in *Hooks v. Bridgewater. See Nagle*, 633 S.W.2d at 800.

The rule developed in *"Moore" Burger* and *Nagle* has been applied in various contexts, but it has not been applied to a case involving easement by estoppel. *See*

*e.g., Exxon Corporation v. Breezevale Limited*, 82 S.W.3d 429, 438–39 (Tex.App.-Dallas 2002, pet. denied)(agreement between oil company and local liaison to share in risks, losses, production, and profits from oil development); *Sonnichsen v. Baylor University*, 47 S.W.3d 122, 125–26 (Tex.App.-Waco 2001, no pet.)(university's alleged promise to give all head athletic coaches two-year written contracts). Courts have continued to review easements by estoppel under *Harrison & Co. v. Boring* and its progeny, *Drye* and *Storms. See e.g., Schilhab v. Dierlam*, 2004 WL 1797585, No. 13–03–00185–CV (Tex.App.-Corpus Christi Aug. 12, 2004, no pet.); *Stallman*, 9 S.W.3d at 246; *Scott v. Cannon*, 959 S.W.2d 712, 720 (Tex.App.-Austin 1998, pet. denied); *Wallace v. McKinzie*, 869 S.W.2d 592, 595 (Tex.App.-Amarillo 1993, writ denied). None of these cases imposed a requirement that the party claiming the easement prove the existence of a written but unsigned document creating an easement and we decline to graft that requirement on the doctrine.

■■ In *"Moore" Burger*, Breezevale, Sonnichsen and other cases cited by the Murphys, the agreements at issue had numerous essential elements. In the absence of a written agreement, one or more of those elements would have to be established by parol evidence. Thus, *"Moore" Burger* imposed the requirement that the written agreement containing all of these elements be in existence at the time of the promise to sign. An agreement to provide a road easement is distinguishable from the agreements in the cases relied on by the Murphys. If a party agrees to provide another with an easement for a particular purpose, there are no other required elements which would have to be supplied by parol evidence. The Murphys complain that the agreement is incomplete because the parties did not reach an agreement

with respect to the width of the easement, but that is not an element which would have to be supplied by parol evidence. It is a well settled rule that where the grant does not state the width of the right-of-way created, the grantee is entitled to a suitable and convenient way sufficient to afford ingress and egress to the owner of the dominant estate. *Crawford v. Tennessee Gas Transmission Company*, 250 S.W.2d 237, 240 (Tex.Civ.App.-Beaumont 1952, writ ref'd), *citing* 28 C.J.S., Easements, § 77, page 757. What is suitable depends on the purpose of the easement. If the grant states merely the object for which the easement is granted, dimensions which are reasonably sufficient for that purpose must be inferred. *Id.*

The Murphys orally agreed to grant the Longs a road easement and the parties agreed on the route after discussing various alternatives. The parties did not specify the width of the road but, as we have noted, that is not a necessary element of the agreement. Because there are no missing terms of the agreement which must be supplied by parol evidence, *"Moore" Burger* is inapplicable and we decline to apply it.

### Vendor–Vendee Relationship

The Murphys also allege that the Longs were required to prove the existence of a vendor-vendee relationship in order to establish an easement by estoppel. The Austin Court of Appeals has held that a vendor-vendee relationship is required to establish an easement by estoppel. *Scott*, 959 S.W.2d at 721. It reached this conclusion after focusing on the following language found in *Storms:*

As generally stated, the doctrine holds that the owner of land may be estopped to deny the Existence [sic] of an easement by making representations that

have been acted upon by a purchaser to his detriment.

*Storms,* 579 S.W.2d at 451, *citing Drye,* 364 S.W.2d at 209. Although *Storms* acknowledges that applying the doctrine of easement by estoppel outside of the vendor-vendee relationship is "rare and nebulous," the Third Court of Appeals is the only court to hold that the doctrine never applies outside of the vendor-vendee relationship. The Fourteenth Court of Appeals questioned this conclusion in *Stallman v. Newman,* but it ultimately did not reach the question. *Stallman,* 9 S.W.3d at 248 n. 2. Because both *Storms* and *Drye* involved a claim by a purchaser of property, it would have been natural for the court to state the doctrine in terms of a purchaser. We do not read *Storms* or *Drye* as holding that an easement by estoppel can never exist unless there is a vendor-vendee relationship between the parties. We decline to follow *Scott.*

The Longs alleged and proved that they substantially relied to their detriment on a promise by the Murphys to provide them with a written and signed road easement. The Longs expended $10,000 to build the road and the Murphys, who use a portion of the road to get to their own home site, have refused to provide the written easement. The jury's findings are sufficient to establish an easement by estoppel. Issue One is overruled.

## DOUBLE RECOVERY

■ In Issue Two, the Murphys contend that the Longs are not entitled to both reliance damages and the award of an easement because it amounts to a double recovery. They argue that the easement is improper inasmuch as the jury found no enforceable contract. While that is certainly true, the jury did find the elements necessary for the imposition of an easement by estoppel. The Longs paid $10,000 for the construction of the road with the understanding they would be awarded a written easement and the parties would share in the cost of the road on a *pro rata* basis. The Murphys, whose home is located approximately halfway between the common easement and the Longs' home site, paid them $1,667. The jury awarded the Longs an additional $1,450 in damages. If the Longs are not awarded the easement, their expenditure of nearly $7,000 to build the section of the road leading to their home site is without any value whatsoever. The doctrine of easement by estoppel prevents this inequity. Finding no double recovery, we overrule Issue Two.

## ATTORNEY'S FEES

■ In Issue Three, the Murphys argue that the court abused its discretion in awarding attorney's fees under the Declaratory Judgment Act. They claim the Longs are not the prevailing party because they are not entitled to a declaratory judgment. The Uniform Declaratory Judgments Act provides that a court may award reasonable and necessary attorney's fees as are equitable and just. TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). Fee awards under the Uniform Declaratory Judgments Act are left to the trial court's sound discretion, subject to the requirement that any fees awarded be reasonable and necessary—which is a question of fact—and that the fees be equitable and just—which is a question of law. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). In reviewing an attorney fee award under the Act, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary or were equitable and just. *Id.* Because we have already determined that the trial court did not err in granting a declaratory judgment, this

argument fails. We overrule Issue Three and affirm the judgment of the trial court.